IN THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHNNIE JEFFERSON** § | | |
| Petitioner § | | |
| | | |
| V. § | | 4:25-CV-01347 |
| | | |
| **AMEGY MORTGAGE LLC** § | | |
| **DOVENMUEHLE SERVICING AGENCY** § | | |
| **CENLAR SERVICING AGENCY and** § | | |
| **CARL MEYERS, LEB-KEMP, TRACI** § | | |
| **YEAMAN, ISRAEL CURTIS, JOHN SISK,** § | | |
| **CLAY GOLDEN, STEPHEN MAYES,** § | | |
| **COLETTE MAYERS, THOMAS GLIBRAITH** § | | |
| **KINNEY LESTER, MATHEW HANSEN,** § | | |
| **EVAN PRESS, RAMIRO CUEVAS, JAMI** § | | |
| **GRADY, AUCTION.COM, ANNE STEWART** § | | |
| **DAVID BARRY, BYRON STEWART,** § | | |
| **PATRICIA POSTON, AUSTIN DUBOIS,** § | | |
| **SANDY DASIGENIS, JEFF LEVS, JOHN** § | | |
| **BURGER, MEGAN RANDLE-BENDER,** § | | |
| **DEBBIE JURASEK, SABRINA PALMER,** § | | |
| **MARINOSCI LAWGROUP PC** § | | |
| **TRUSTEE** § | | |
| Respondents § | | |

**PETITIONER 'S 1st AMENDED ORIGINAL PETITION AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

**NOW COMES PETITIONER, JOHNNIE JEFFERSON**, and files this 1st Amended

.Original Petition, complaining of Respondents ZB, National Association, Amegy Mortgage LLC,

Dovenmuehle Servicing Agency, Cenlar Servicing Agency, Carl Meyers, Leb Kemp, Traci

Yeaman, Israel Curtis, John Sisk, Clay Golden, Stephen Mayes, Colette Mayers, Thomas Glibraith,

Kinney Lester, Mathew Hansen, Evan Press, Ramiro Cuevas, Jami Grady, Auction.Com, Anne

Stewart, David Barry, Byron Stewart, Patricia Poston, Austin Dubois, Sandy Dasigenis, Jeff Levs,

John Burger, Megan Randle-Bender, Debbie Jurassic, Sabrina Palmer, Marinescu Law group P.C,

as Substitute Trustee and respectfully shows the Court as follows:

**PARTIES**

1. Petitioner, Johnnie Jefferson, is an individual residing in Fort Bend County, Texas.

2. Respondent Amegy Mortgage has filed an answer.

3. Respondent Dovenmuehle has filed an answer.

4. Respondent Cenlar has filed an answer.

5. Respondents Carl Meyers, Lab Kemp, Traci Yeoman, Israel Curtis, John Sisk, Clay Golden, Stephen Mayes, Colette Meyers, Thomas Gilbreath, Kinney Lester, Mathew Hansen, Evan Press, Ramiro Cuevas, Jami Grady, Auction.Com, Anne Stewart, David Barry, Byron Stewart, Patricia Poston, Austin Dubois, Sandy Dasigenis, Jeff Levs, John Burger, Megan Randle-Bender, Debbie Jurassic, Sabrina Palmer, Marinescu Law Group PC, as Substitute Trustee may be served at 16415 Addison Road, Suite 725, Addison, Texas 75001. The Plaintiff will determine which trustee actually conducted the foreclosure and serve them at a later date, unless the Respondent's counsel files an answer, without service as it did with the other Defendants...

## DISCOVERY CONTROL PLAN

6. Under Texas Rule of Civil Procedure 190.3, Petitioner plans to conduct discovery under Level 2 and affirmatively pleads this suit is not governed by the expedited actions process Rule 169 of the Texas Rules of Civil Procedure because Petitioner seeks injunctive relief.

## LACK OF DIVERSITY JURISDICTION

This Honorable Court lacks the jurisdiction to hear this case as there is no diversity of citizenship among the parties and the Plaintiff is not requesting and amount of $75,000.00 or more.

   a. Lack of diversity – The lawyers of Thee Marinosci Lawgroup PC all reside in the State of Texas.

   b. Th Plaintiff is not claiming more than $75,000 as damages.

## FACTUAL BACKGROUND

7. Petitioner is the owner of the property located at 4123 Fisher Lake Drive, Richmond, Fort Bend County, Texas.

8. On or about August 15, 2005 the Respondent Jefferson, obtained an Original Loan Agreement from Amegy Mortgage LLC, to purchase the property located at 4123 Fisher Lake Drive.

9. The first 359 payments were $2,181.33 and the Final Payment was $2,172.93.

10. On or about August 17, 2006, Dovenmuehle became the loan servicer on behalf of Amegy Mortgage LLC.

11. On or about June 18, 2012, Petitioner agreed to a loan modification, which contained an approximate 3-month trial period, the amount of the payments during the trial period was $1,333.67.

12. On or about September 1, 2012, the new modified payment plan began, in the lowered amount of $1,333.55.

13. On or about November 17, 2012, the Petitioner received a letter from the loan servicer Dovenmuehle indicating that the November payment of $1,333.55 was a partial payment and that an additional $980.88 was due on or before November 31, 2012.

14. Respondent sent a payment to Dovenmuehle in the amount of $980.88 on December 1, 2012, and another payment on December 9, 2012, in the amount of $1,333.55.

15. On or about January 3, 2013, at a date after the December payment, the Petitioner requested and received a payment coupon book which indicated that her monthly payments were to be paid in the amount of $980.88.

16. On or about January 27, 2013, Petitioner sent in the February payment of $980.88 based on the coupon book.

17. On or about February 22, 2013, Petitioner sent in the March 2013, payment, based on the coupon book.

18. On or about March 25, 2013, Petitioner sent in the April payment of $1,333.55 also based on the coupon book.

19. During the Months of April 2013 through March 2014, the Petitioner made the required payments in the amount of $1,333.55.

20. On or about Aril 2, 2014, Petitioner received a letter from Dovenmuehle that the check for $1,333.55 was being returned because an amount of $16,647.83 was due and payable.

21. On or About April 30th, based on Dovenmuehle's letter, Petitioner sent in a payment in the amount of $2,667.10 to correct the amount that represented a difference the coupon book payments for April and May of 2014.

22. On or about June 13, 2014, Dovenmuehle sent a letter to the Petitioner indicating that the $2,667.10 payment made in April was not enough to cover the outstanding balance of $16,647.83 that was due was insufficient to re-instate Petitioner 's account.

23. On or about June of 2014, Dovenmuehle returned the April payment.

24. On or about June 16, 2014, Dovenmuehle sent a letter to the Petitioner indicating that the new loan servicer acting on behalf of Amegy Mortgage LLC was the Cenlar corporation (herein after "Cenlar").

25. Cenlar then requested that the Petitioner make a July 2014, payment and the Petitioner made the payment.

26. Cenlar then requested that the Petitioner make an August 2014, payment and the Petitioner also made that payment.

27. Those two payments were then returned by the loan servicer Cenlar on August 13, 2014.

28. On or about February 27, 2024, Petitioner received a letter from Amegy Mortgage LLC, informing Petitioner that her of her 20-day "Right to Cure" and 21-day Notice that her homestead was going to be foreclosed on the next First Tuesday of the month, after the expiration of 21days, on April 4, 2024.

29. The Letter required the Petitioner to pay Amegy Mortgage LLC Company LLC. At its Woodlands location.

30. The Foreclosure notice letter indicated that the foreclosure was to be held by one of the Substitute Trustees Jeff Leva or Lillian Poelker or Sandy Dasigenis or Deborah Jurasek and/or Amy Jurasek all residents of the State of Texas.

31. The actual foreclosure, however, was held by one of the Defendant Trustee's listed above, also all residents of The State of Texas.

32. On April 1, 2024, the Honorable Judge Christian Becerra granted a Temporary Restraining Order (TRO) in favor of Petitioner, prohibiting Respondent from proceeding with a foreclosure sale scheduled for April 2, 2024.

33. The TRO, however, was issued without the Honorable Bacerra providing the requisite bond amount, which was asked for and granted, in accordance with Tex. R. Civ. P. 684.

34. Once Petitioner posted the bond within 24 hours after the TRO was granted.[1]

35. Despite the TRO, Respondent Amegy Mortgage LLC and the Substitute Trustee on behalf of Amegy Mortgage LLC proceeded with the foreclosure of Petitioner's property on April 2, 2024, selling it for a price far below market value. Petitioner suffered a significant loss in equity as a result of this sale.

36. Respondent has unjustly retained the benefit of this sale despite the technical deficiency in the TRO, which was not caused by Petitioner.

---

[1] Although the bond for the TRO was requested in a timely manner, the Court did not issue the TRO until the next day, by which time the property was sold.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

36. Petitioner asks the Court for specific injunctive relief during this litigation. Plaintiff is currently in the process of being evicted from her homestead.

37. Petitioner's application for a temporary restraining order is statutorily authorized.

38. Petitioner is likely to recover from Respondents after a trial on the merits because the taking of her house was wrongful as outlined in the paragraphs below.

39. If this Court does not grant this request to restrain the Respondents, the Petitioner will suffer imminent and irreparable harm in that property is unique in nature and cannot be replaced, Respondent may cause the property to be sold and the owner may be evicted.

40. Petitioner has no adequate remedy at law, therefore, Petitioner requests that this court issue a temporary Restraining Order and thereafter a Temporary Injunction, to restrain the Respondent from selling the property commonly known as 4123 Fisher Lake Drive, Richmond Texas 77469 as well as taking any legal action to evict the Petitioner or any other occupants from the property or enforcing a writ of possession regarding the property, until this matter is settled.

41. Petitioner further requests that upon a trial on the merits, the Respondents be enjoined from the same acts listed in paragraph 36 above.

42. Petitioner will likely prevail on the merits set forth in this complaint.

43. The granting of the relief requested is not inconsistent with public policy considerations.

44. There is insufficient time to serve notice on Respondents and to hold a hearing on this petition and application because the Petitioner is requesting that she be turn over the house today.

**BOND**

45. Petitioner is willing to post a reasonable bond for the temporary restraining order and requests the Court to set the reasonable bond.

### AMEGY MORTGAGE, LLC, DID NOT HAVE STANDING TO FORECLOSE ON THE PETITIONER'S PROPERTY

60. On or about December 14, 2016, Amegy bank and ZB, National Association merged and as a result of the merger Amegy Bank ceased to exist, with the resulting bank to be called ZB, National Association.

61. On or about October 30, 2018, ZB, National Association changed its name to Zion Bancorporation, National Association.

62. All of these occurrences took place before the notice letter was sent to the Petitioner by Zion Bancorporation, National Association on behalf of Amegy Mortgage LLC.

63.. Amegy Bank, ZB National Association names were changed and ceased to exist.

64. It is well settled that a business that does not exist in the State of Texas cannot do business in the State of Texas.

65. Because Amegy Mortgage LLC, did not exist at the time of the Notice of Right to Cure was sent by company not in existence and the Foreclosure was also conducted by a company not in existence the foreclose should be set aside.

66. Respondent's actions caused injury to Petitioner, which resulted in the following damages: loss of the quiet use and enjoyment of her property and attorney fees.

67. Petitioner seeks unliquidated damages in the return of her homestead, which is within the jurisdictional limits of this court.

68. <u>Attorney fees.</u> Petitioner is entitled to recover reasonable and necessary attorney fees under the provisions of the written contract, which provides for attorney fees for a prevailing party based on litigation brought under the terms of this contract, in an amount less than $75,000.00.

## CAUSES OF ACTION

### Wrongful Foreclosure as to Amegy Mortgage LLC and the Substitute Trustee

46. Wrongful Foreclosure Occurs when there is a defect in the foreclosure sale proceedings; namely when there is a grossly inadequate selling price; and A causal connection between the defect and the grossly inadequate selling price.

47. Respondent Amegy Mortgage LLC in an answer filed by ZB, National has indicated that the Petitioner was incorrect in that it was ZB, National that foreclosed her property, as Amegy Mortgage LLC was a Dissolved Corporation.

48. Petitioner has determined that on or about December 31, 2016, there was a merger between Amegy Mortgage LLC and ZB, National Association and that ZB, National was the surviving company.

49. Petitioner, however, has also learned after the filing of her original petition, that on or about 10/30/2018 ZB, National had a name change and changed its name to ZB Bancshares.

50. Because a company that did not exist filed for the foreclosure, the foreclosure should be set aside.

51. Further on 03/09/2021 Zions Bancorporation, National Association filed an assumed name change to Zions Capital Markets

52. As a result of the inadequate selling price and the

### Lack of Proper Notice

53. Both the Right to Cure and the Notice of Foreclosure were mailed via certified US Mailed on February 27, 2024, informing the Petitioner that her house would be foreclosed on April 2, 2024.

54. TITLE 5 OF THE TEXAS PROPERTY CODE, 51.002 SALE OF REAL PROPERTY UNDER CONTRACT LIEN, section (b-1)(d), states: ". . . [debtor is to be provided

at debtor's] residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract *lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)*. Emphasis Added.

55. Subsection b reads (b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

56. Because the Respondent gave both the Notice of the Right to Cure and the Notice of Foreclosure in the same letter, without giving the Petitioner of the time provided by statute, the Petitioner was not given proper notice and as a result the foreclosure should be set aside.

57. Respondent's failure to provide proper notice caused injury to Petitioner, which resulted in the following damages: loss of the quiet use and enjoyment of her property and attorney fees.

58. Petitioner seeks unliquidated damages in the return of her homestead, which is within the jurisdictional limits of this court.

59. <u>Attorney fees.</u> Petitioner is entitled to recover reasonable and necessary attorney fees under the provisions of the written contract, which provides for attorney fees for a prevailing party based on litigation brought under the terms of this contract in an amount less than $75,000.00.

**Breach of Contract as to Amegy Mortgage LLC, Dovenmuehle and Cenlar**

69. On or about April 15, 2005, Petitioner and Respondent executed a valid and enforceable written contract. The contract provided Petitioner would pay a monthly mortgage to the Respondent Amegy Bank and after all the payments were made, the Respondent would give the Petitioner ownership of the house

70. Petitioner fully performed her obligations under the contract each month.

71. Respondent breached the contract by using incorrect accounting, not making proper payments and based on those actions/inactions foreclosing the property.

72. Respondent's breach caused injury to Petitioner, which resulted in the following damages: loss of the quiet use and enjoyment of her property and attorney fees.

73. Petitioner seeks unliquidated damages in the return of her homestead, which is within the jurisdictional limits of this court.

74. <u>Attorney fees.</u> Petitioner is entitled to recover reasonable and necessary attorney fees under the provisions of the written contract, which provides for attorney fees for a prevailing party based on litigation brought under the terms of this contract, for an amount less than $75,000.00

**Promissory Estoppel Dovenmuehle Servicing Agency and Cenlar Servicing Agency**

75. In the alternative to Count 1, Respondent made a promise to Petitioner that Respondent did not keep.

76. Respondent promised Petitioner that Respondent would accept Petitioner's money, make a proper record of Petitioner's and after the payments were made deliver title to the property the Petitioner.

77. Petitioner relied on Respondent's promise by paying the amounts requested by the Respondent Amegy Bank, by and through its loan servicers Dovenmuehle. Because of the nature of the promise, Petitioner's reliance was both reasonable and substantial.

78. Respondent knew, or reasonably should have known, that Petitioner would rely on Respondent's promise.

79. Only if Respondent's promise is enforced can injustice to Petitioner be avoided.

80. Petitioner's reliance on Respondent's promise resulted in injury to Petitioner, which caused the following damages: loss of the quiet use and enjoyment of her property and attorney fees.

81. Petitioner seeks unliquidated damages within the jurisdictional limits of this court.

82. <u>Attorney fees.</u> Petitioner is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code section 38.001(8) because this is a suit for promissory estoppel, in an amount less than $75,000.00.

**Unjust Enrichment as to Amegy Mortgage LLC**

Petitioner incorporates by reference all prior paragraphs as if fully set forth herein.

83. Respondent will be be unjustly enriched by selling the Petitioner's property.

84. Petitioner conferred a substantial benefit upon Respondent by investing in and improving the property, creating substantial equity.

85. Respondent appreciated and retained this benefit through the foreclosure sale, which occurred under inequitable circumstances.

86. It is inequitable for Respondent to retain the benefit of Petitioner's equity without compensating Petitioner.

**Equitable Relief as to Amegy Bank, Dovenmuehle Servicing Agency, Cenlar Servicing Agency and the Substitute Trustee**

87. Petitioner incorporates by reference all prior paragraphs as if fully set forth herein.

88. Petitioner seeks equitable relief to recover the lost property, to remedy the harm caused by the foreclosure sale.

89. Respondent's actions have caused substantial financial and emotional harm to Petitioner.

90. The bond provided by Petitioner was posted timely and would have provided sufficient protection for Respondent had the foreclosure not proceeded.

91. Equitable principles require that Petitioner be restored to the position they were in prior to the foreclosure.

**Breach Of Fiduciary Duty, Amegy Bank, Dovenmuehle Servicing Agency, Cenlar Servicing Agency and the Substitute Trustee.**

92. Respondents had a fiduciary relationship with Petitioner to act in the Petitioner's best interest.

93. Respondents breached its fiduciary duty to Petitioner by:

> Misappropriation of assets – Taking or using or improperly misapplying Petitioner's payments.
>
> Conflict of interest – Putting personal interests before duties.
>
> Self-dealing – Gaining personal profit from fiduciary roles.
>
> Negligent management – Failing to properly handle assets.
>
> Poor record-keeping – Not maintaining accurate records.
>
> Failure to Properly distribute – Not delivering/distributing payments and equity as required.

94. Respondents' breach of fiduciary duty injured Petitioner by causing her to lose her home, which resulted in the following damages: loss of the quiet use and enjoyment of her property and attorney fees

95. Respondent's breach of fiduciary duty benefited Respondents in the following ways: allowing the Respondents to obtain the Petitioner's property for a below market value and then the profits from the resale of the property.

96. Petitioner seeks unliquidated damages, in the return of her homestead, which is within the jurisdictional limits of this court.

**ATTORNEY'S FEES**

98. Petitioner is entitled to recover reasonable attorney's fees and costs, in an amount less than $75,000.00, from the Respondents joint and severally, pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.009, 38.001.

## PRAYER FOR RELIEF

**WHEREFORE, PETITIONER JOHNNIE JEFFERSON** respectfully requests that this Court enter judgment in her favor and award the following relief:

    a)     Actual damages in the form of lost equity.

    b)     Equitable relief to restore Petitioner's position.

    c)     Attorney's fees and costs of court.

    d)     Pre- and post-judgment interest.

    e)     Any other relief to which Petitioner may be justly entitled.

### Conditions Precedent

Petitioner confirms that all conditions precedent to Petitioner's claim for relief have been performed or have occurred.

### Prayer

Petitioner prays that the Court will cite Respondents to appear and answer and that Petitioner be awarded a judgment against Respondents, on final trial, as follows:

Temporary restraining order.

Petitioner further prays that the Court will grant actual damages of the value of the house, prejudgment and post judgment interest, all costs of Court, and for all other relief to which Petitioner is entitled both in equity and law.

Respectfully submitted,

The Law Office of Rodney E. Moton
5315-B Cypress Creek Parkway, #140
Houston, TX 77069-4403

/s/ *Rodney E. Moton*
Rodney E. Moton
Attorney for Johnnie Jefferson
Bar no: 24001432
Cell Phone: (713) 380-5152
Email: attymoton@me.com